Delivered January 30, 1891.

---

### MOLLIE E. STALLINGS v. JOHN A. HULLUM.
#### No. 6604.

1. **Irrelevant Testimony.**—A wife sued alone to recover the homestead alleged to have been sold by the husband, and alleging that her consent and acknowledgment to the deed had been obtained by fraud of her husband and the purchaser, the defendant.   The husband abandoned plaintiff soon after the transaction, and wrote letters to others touching his treatment of plaintiff, etc.   There was no conflict of testimony to the abandonment of plaintiff by her husband and consequent right to sue alone.   *Held*, the exclusion of the letters of the husband was immaterial and no ground for reversal.

2. **Privileged Communications—Lawyer and Client.**—A witness who was a lawyer and also an "abstractor of titles" was employed and paid for services in examining the title, etc., not as lawyer.   During the transactions the parties made important statements touching the sale of the land, which was the homestead, and affecting the wife of the vendor.   *Held*, it was error to exclude the testimony on the ground that the conversations detailed by the witness were privileged communications.   A conveyancer is not necessarily an attorney or legal adviser.

3. **Fraud in Obtaining Privy Acknowledgment.**—It is well settled that although the proper certificate of privy acknowledgment be attached to the deed by the husband and wife, it may be avoided by her if it does not speak the truth, or the deed or acknowledgment were obtained by fraud or force, provided the purchaser is chargeable with notice of these facts before the payment of the purchase money.

4. **Fraud—Case in Judgment.**—The husband contracted to sell his homestead for $1000.   The wife was told by the husband that the purchaser was to pay $2500 for

the homestead, and she consented to a sale at that price. A deed was prepared reciting a consideration of $2000. This was signed and acknowledged by the wife and was delivered upon the payment of $1000. *Held,* that the transaction showed a fraud upon the wife, and that she was not bound by the deed so obtained from her.

APPEAL from Midland. Tried below before Hon. Wm. Kennedy.
The opinion gives a statement.

*J. D. Martin,* for appellant.—1. The court erred in instructing the jury to disregard the testimony of J. C. Kerr, because the testimony of the witness did not divulge a privileged communication.

(1) Because J. C. Kerr was not acting in the capacity of legal adviser at the time the statements were made, and particularly as to the consideration in the deed.

(2) Because some of the communications were made in the presence of others, and none of them were of a confidential character, but were made to a friend rather than to an attorney. 1 Wait's Act. and Def., pp. 468, 469; Satterlee v. Blin, 36 Cal., 487; Hutton v. Robinson, 14 Pick., 416; Flack v. Neill, 26 Texas, 273.

2. If defendant knew that a false consideration was expressed in the deed he was put upon inquiry as to whether plaintiff had consented to that fact, and had he pursued such inquiry to its proper source he could have ascertained that she was unwilling to sell her homestead for the price he paid. Davis v. Kennedy, 58 Texas, 516; Wiley v. Prince, 21 Texas, 637; Cole v. Bammel, 62 Texas, 111.

*B. G. Bidwell,* for appellee.—1. Communications made by a client to his attorney, who is acting as his legal adviser or even as a conveyancer, are privileged, and the court should neither compel nor permit their disclosure. 1 Greenl. on Ev., sec. 237, *et seq.;* Wilson v. Troup, 7 Johns. Ch., 25.

As to conveyancers. 1 Greenl. on Ev., sec. 241.

As to courts permitting the disclosure. 13 Johns., 472.

2. If appellee purchased in good faith he would not be affected by the husband's fraud unless he participated in it or knew of it. He is not required to become the adviser of Mrs. S. nor expected to presume that her husband was attempting to defraud her. Davis v. Kennedy, 58 Texas, 516; Kocourek v. Marak, 54 Texas, 201; Pool v. Chase, 46 Texas, 207; Pierce v. Fort, 60 Texas, 464; 9 Am. Rep., 38; 18 Am. Rep., 634.

HOBBY, PRESIDING JUDGE.—The object of this suit was to recover the plaintiff's homestead and to cancel a deed thereto executed by her jointly with her husband, but the execution of which she alleged had been fraudulently procured from her by her said husband and the defendant, Hullum.
The petition contained averments to the effect that the property de-

scribed constituted the homestead of plaintiff and her husband, J. E. W. Stallings, in the town of Midland, Texas. That her husband, who had conceived the intention to abandon her, which was known to defendant, Hullum, represented to her that the defendant would pay the sum of $2500 for their homestead if she would execute with him a deed thereto. That on July 5, 1886, relying upon this statement, she joined her husband in the execution of said deed to the defendant and acknowledged the same in form of law. That she did not read the deed nor was it read or explained to her; that the consideration recited therein was $2000, which was false, and that in fact $1000 was the only amount paid by the defendant to her husband; that this sum and no more had been agreed upon as the true consideration between the defendant and her husband, and was by them fraudulently concealed from her until after the execution and delivery of said deed, with the intent to deprive her of her homestead.

She alleges that her husband on July 8, 1886, after receiving said consideration and disposing of her household and kitchen furniture to defendant and the balance of their property to others, abandoned her. That immediately after such abandonment she, being still in possession of the homestead, ascertained that it had been sold by her husband to the defendant for $1000, as above explained, and she refused to deliver possession to the defendant. It is alleged that this was a fraud practiced upon her by the defendant and her husband to deprive her of her homestead, and she prayed for a cancellation of the deed.

The answer denied each of the averments charging fraud, etc., and by cross-action a recovery of the property was sought.

There was a trial by jury, resulting in a verdict and judgment for the defendant.

The plaintiff appeals.

The first error complained of is the court's exclusion of two letters of the plaintiff's husband offered in evidence by her, and which were objected to upon the ground of irrelevance and because they were written after the execution of the deed and were addressed to a third party.

These letters were identified by the plaintiff as having been written by her husband. They were addressed to a third party. The first was dated at "Dallas, Texas, July 8, 1886," the second at "Raleigh, North Carolina, July 12, 1886."

It is only necessary, we think, to say in disposing of this assignment that the letters, in so far as they can be considered as relevant as to the issues in this case, tended to show an abandonment of the plaintiff by her husband and that therefore she was authorized to sue alone. They were not admissible upon any other theory. As, however, this was not a controverted fact in the case, and one which had been abundantly shown by other proof, there was no error in excluding them.

The second assignment is that the court erred in excluding the testimony of the witness J. C. Kerr from the jury and in instructing the jury to disregard the same.

This witness testified on the trial that he was an attorney at law and abstractor of titles.    That on the afternoon of July 5, 1886, plaintiff's husband, Stallings, came to him with a blank deed and requested him to write or prepare it.    This occurred at the county clerk's office, where the witness and Roundtree, the clerk, were when Stallings came in.    The latter told the witness when he reached the blank in the form for the grantee's name to insert the defendant's name, John A. Hullum, and $2000 as the consideration, which he did.    In a short time after this the defendant, Hullum, came to witness's office and requested him to see if Stallings's title was good.    "I remarked to him, 'you are paying a good price for the house.' He answered, 'I am only paying $1000 for it, but don't want anybody to know it.'"    The witness stated that he examined the title, and later in the evening saw Stallings and defendant together.    "They called him over and asked how the title was.    I said there were two deeds not accounted for, probably recorded in Tom Green County, and there were no liens on the property."    The witness considered his work then completed.

The following day, July 6, 1886, the defendant and Stallings came to witness's office with the deed executed by the latter and wife and acknowledged, and "asked me to insert in the body of the deed a list of the personal property, such as stove, carpets, lamps, which I refused to do, as the deed seemed to me to be complete."    Witness stated further that he made a bill of sale from Stallings to defendant of the said personal property, the former saying that any consideration might be stated as it was "all in the same trade and consideration as the former deed."

On the same day at about 11 o'clock, the witness also testified, he met the defendant, Hullum, in the county clerk's office, who said to witness, "I have just filed the deed, but as the deed calls for $2000 while I only paid $1000, can Stallings come back on me for the other $1000?"    "I remarked that if the parties clearly contracted for $1000 and knew that was the real consideration, they can not come back for the balance."

On cross-examination the witness said he "received no fee as attorney but only as an abstractor of title."    That he did not consider that he was employed by Hullum as an attorney, and was only employed to examine the title.

After the witness had testified as above stated, on motion of the defendant's counsel, the court excluded it from the jury and instructed the jury not to consider the same, because it appeared that his testimony disclosed a confidential communication between attorney and client.

We think under the facts developed in this case the excluded evidence was relevant and was upon a material issue.

The question of the alleged concealment from the plaintiff by her hus-

band and the defendant of the real consideration to be paid for the homestead was manifestly an important one, and any declaration by or admission of the defendant relative to that issue was clearly revelant.

We do not think that the statements made by the defendant, Hullum, to the witness Kerr are of that class of professional communications which upon grounds of public policy are excluded as evidence upon the ground stated. They must be made to one who is acting in the capacity of legal adviser. 1 Greenl. Ev., sec. 239. One who is a conveyancer of land or merely a real estate broker or agent, it is held, while acting in that capacity is not a legal adviser. 1 Greenl. Ev., 14 ed., note 2. And the communication, it is said, must be made for the purpose of obtaining professional advice or aid in the matter to which the communication relates. Flack v. Neill, 26 Texas, 276. While the protection would not be lost in a case where an attorney was employed to draw a deed, we do not think under the facts of this case, where the witness was acting merely as a conveyancer, and the communication with respect to the secrecy of the real consideration paid by the defendant could not have been made for the purpose or with a view to obtaining any advice with reference to it, that it comes within the rule quoted, and the testimony should not have been excluded from the jury.

The third assignment relates to the failure of the court to charge the jury that if the defendant "knew at the time he paid the purchase money that the deed contained a false consideration and one larger than the real consideration paid, this was a sufficient knowledge to put him upon inquiry, and he was guilty of constructive fraud."

The rule is well established in our State, and has been recognized and repeated in several cases, that where the conveyance is executed by the husband and wife, as in the present case, and "in the manner and under the circumstances required by law," and is acknowledged by them before the proper officer, "she can not by extraneous proof establish the fact that the certificate does not speak the truth, and thus defeat the right of an innocent purchaser for a valuable consideration." Davis v. Kennedy, 58 Texas, 519, and cases cited.

It is as well settled on the other hand that although the proper certificate may be attached to the deed of the wife, it may be avoided by her if it does not speak the truth or the deed or acknowledgment were obtained by fraud or force, provided the purchaser is chargeable with notice of either of these facts before the payment of the purchase money. Cole v. Bammel, 62 Texas, 112.

There is a conflict in the evidence as to whether the deed was explained to her by the officer; but there is no conflict as to the fact that she did not read the deed, and the further fact that the consideration recited in it was known to the defendant not to be the true consideration paid by him.

There was testimony also to the effect that the real consideration was concealed by the plaintiff's husband and the defendant.

The court instructed the jury, in substance, that "If plaintiff's husband, intending to defraud her, represented that defendant would pay $2500 for the property, that she consented to execute the deed for that consideration, and executed it in ignorance of the true consideration to be paid by defendant, and that he paid $1000 with a knowledge that a false consideration had been fraudulently inserted in the deed, then it was a fraud," etc.

Accepting the case made by the defendant's proof that the deed was explained to Mrs. Stallings, and that she knew the consideration to be as therein expressed, $2000, it would have been none the less fraudulent and invalid as to her if the defendant, without her assent, obtained it by the payment of only $1000. This would have been a deception practiced upon her in the execution of the instrument.

Leaving entirely out of view her husband's representation that the defendant would pay $2500 for the property, and that he deceived her by leading her to suppose that he had sold it for that sum, the fact still remains that if the defendant, without her knowledge or consent, made a payment to the husband of $1000 less than the consideration recited in the deed pursuant to an agreement entered into with him before the execution of the deed, he must have known that he was consummating a contract which the plaintiff had not made, and which was fraudulent as to her and necessarily could not be enforced against her.

There is no doubt that it would have been competent for the defendant to have shown, had such been the fact, that although the expressed consideration was $2000 she had consented to a subsequent change reducing it to $1000, and that consequently the payment of this latter sum did not operate as a fraud or deception as to her.

Independently of the issue of an alleged fraudulent combination between the plaintiff's husband and the purchaser to induce her to execute a deed conveying the homestead by deceiving her as to the consideration to be paid therefor, we think the court should have instructed the jury under the facts of this case, in substance, that if they found that after the execution by the wife of the deed reciting the consideration of $2000, the subsequent payment by the defendant to the husband of $1000 only upon delivery of said deed to him pursuant to an agreement previously made with her husband and without her consent or acquiescence, it would be such a fraud upon the wife as would invalidate the deed as to her.

The payment of the sum of $1000 by the purchaser under these circumstance when the deed recited $2000 as the consideration would constitute as effectually a fraud upon her as if the deed had been subsequent to its execution by her changed from the consideration of $2000 to that of $1000 by the husband and the purchaser. Cole v. Bammel, *supra.*

It was none the less a fraud as to the plaintiff that this alteration was practically so made, although it was not made to appear on the face of the deed.

The question raised by the fifth assignment, to the effect that the verdict was not an impartial one, because certain jurors are alleged to have expressed their opinion before they were sworn in, is not one which will probably be raised upon another trial.

For the errors mentioned, we think the judgment should be reversed and the cause remanded.

*Reversed and remanded.*