MILLER et al. v. FLATTERY et ux.
(No. 357.)

(Court of Civil Appeals of Texas. El Paso. Nov. 12, 1914. Rehearing Denied Dec. 3, 1914.)

1. VENDOR AND PURCHASER (§ 92*)—RESCISSION BY VENDOR—FRAUD.

A vendor in a deed reciting a cash consideration of $2,200, who delivered it for a consideration part cash and part notes, assigned by the purchaser without recourse, on his agent's assurance that he had a purchaser for the notes, upon the agent's failure to have the notes cashed, could not rescind as against the purchaser.

[Ed. Note.—For other cases, see Vendor and Purchaser, Dec. Dig. § 92.*]

2. HOMESTEAD (§ 38*)—ACQUISITION—OCCUPANCY.

When a homestead dedication has not been effected by actual occupancy, such effect must be accorded to ownership and visible acts of preparation to use it for a home.

[Ed. Note.—For other cases, see Homestead, Cent. Dig. § 57; Dec. Dig. § 38.*]

3. HOMESTEAD (§ 57*)—ACQUISITION—SUFFICIENCY OF EVIDENCE.

Evidence held to warrant a finding that premises were impressed with a homestead status at the time of their conveyance by plaintiffs.

[Ed. Note.—For other cases, see Homestead, Cent. Dig. §§ 83–85; Dec. Dig. § 57.*]

4. HOMESTEAD (§ 118*)—JOINDER OF WIFE—AVOIDANCE FOR FRAUD.

Title to a homestead could not pass without the wife's joinder in the conveyance, untainted by fraud of any kind upon her rights; and, if the deed was delivered by her husband in fraud of her rights, she would not be precluded from asserting them against the purchaser.

[Ed. Note.—For other cases, see Homestead, Cent. Dig. §§ 192, 195, 203–209, 216, 217; Dec. Dig. § 118.*]

5. HOMESTEAD (§ 118*)—CONVEYANCE—FRAUD UPON WIFE.

Where a wife signed a deed of her homestead, reciting a consideration of $2,200, with the understanding that it was to be paid in cash, and where her husband, without her knowledge or consent, delivered it for a part cash consideration and notes assigned to him without recourse, the substitution of the notes in part payment was a fraud upon the wife's rights, entitling her to rescind as against a purchaser with notice of the recited consideration, who made no inquiry to ascertain the husband's authority to deliver on other terms of payment.

[Ed. Note.—For other cases, see Homestead, Cent. Dig. §§ 192, 195, 203–209, 216, 217; Dec. Dig. § 118.*]

6. VENDOR AND PURCHASER (§ 229*)—BONA FIDE PURCHASER—NOTICE.

One claiming title to land is charged with notice of every matter affecting the estate which appears on the face of any deed forming an essential link in the chain of his title, and also with notice of whatever he would have learned by any inquiry which the recitals therein required him to make.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 477–494; Dec. Dig. § 229.*]

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

**7. HOMESTEAD (§ 129*)—BONA FIDE PURCHASER—NOTICE—FRAUD ON VENDOR.**

One purchasing for value from a purchaser of homestead premises, charged with notice of a recited consideration of $2,200 and constructive notice of the wife's understanding, when she signed the deed, that payment was to be in cash, and having actual notice that notes assigned without recourse had been substituted as a part of the consideration, was justified in assuming that the substitution was authorized or ratified by the vendor, was not bound to make any inquiry as to such substitution, was not chargeable with constructive notice of the fraud practiced upon the vendor, and was entitled to the protection of an innocent purchaser.

[Ed. Note.—For other cases, see Homestead, Cent. Dig. §§ 233, 234; Dec. Dig. § 129.*]

**8. HOMESTEAD (§ 122*)—RESCISSION BY VENDOR—ESTOPPEL.**

In such case, where the subsequent purchase was made several months after delivery of the deed to the first purchaser, during which time he had been in peaceable possession, collecting the revenues, and the subsequent purchaser had no notice or reason to think that the vendor was dissatisfied with the substitution of the notes instead of an entire cash consideration, such vendor was estopped to rescind as against the subsequent purchaser.

[Ed. Note.—For other cases, see Homestead, Cent. Dig. §§ 220–222; Dec. Dig. § 122.*]

Error to District Court, Harris County; Wm. Masterson, Judge.

Action by T. F. Flattery and wife against J. W. Miller and others. Judgment for plaintiffs, and defendants bring error. Reversed and remanded.

G. W. Tharp and Barkley & Green, all of Houston, for plaintiffs in error. W. W. Kirkpatrick and R. L. Whitehead, both of Houston, for defendants in error.

HIGGINS, J. T. F. Flattery and wife, Hattie L. Flattery, executed a deed to J. W. Miller for a recited consideration of $2,200 cash, covering a parcel of land with improvements, dated and delivered March 4, 1911. By deed dated in August, 1911, Miller conveyed same to his daughter, Maggie E. Moore, for a recited consideration of $2,500 cash, but the true consideration was the release of an indebtedness of $2,985, due by Miller to his daughter and of a mortgage securing such indebtedness upon a plantation in Louisiana.

This suit was filed by Flattery and wife, several months subsequent to the last-mentioned conveyance, against Miller and wife and Mrs. Moore and her husband, seeking a recovery of the premises based upon fraud alleged to have been perpetrated by Miller in securing delivery of the deed first mentioned. The material facts upon which the claim of fraud is predicated, in brief, are that Flattery and wife placed the property .for sale in the hands of an agent Hurlock. Miller agreed to purchase for $2,200, paying $1,200 in cash, and transferring to Flattery, without recourse, notes to the amount of $1,000. Mrs. Flattery signed the deed with the understanding that the consideration was to be paid in cash as the deed recited, and her husband was without authority from her to deliver the deed, except upon payment in cash of the consideration stipulated therein. The husband, without her knowledge or consent, delivered the deed upon payment by Miller of $1,200 cash and transfer to him of the notes mentioned. The agent Hurlock represented to Flattery that he had a purchaser for the notes who would cash same, and upon the faith of this representation the notes were accepted by Flattery. The prospective purchaser, however, failed to consummate the purchase thereof.

[1] In so far as the husband is concerned, the allegation of fraud is wholly unsupported by the evidence. There is no evidence whatever of any fraud practiced by Miller upon him, and it clearly appears that Flattery delivered the deed and accepted from Miller the $1,200 cash and transfer of the notes without recourse, with full knowledge of all the facts, and relying simply upon Hurlock's promise to have same cashed. Manifestly Hurlock's failure to have the notes cashed does not warrant a rescission of the conveyance, so far as concerns the husband.

[2-4] But if it was the homestead of the parties, and the deed was delivered in fraud of the wife, she would not be precluded from asserting her rights.

It is urged that the facts do not show the premises to have been impressed with the homestead character. It had never been actually occupied as such, but the lot had been purchased for homestead purposes, and, in pursuance of this purpose, the house thereon had been erected and just completed a short time prior to the conveyance. The failure of the parties to move into it was explained by the fact that they had paid rent on the house they were occupying, and their month was not up. When a homestead dedication has not been effected by actual occupancy, such effect must nevertheless be accorded to ownership, intention, and visible acts of preparation to use it for a home. Archibald v. Jacobs, 69 Tex. 251, 6 S. W. 177; Cameron v. Gebhard, 85 Tex. 610, 22 S. W. 1033, 34 Am. St. Rep. 832; Foley v. Holtkamp, 28 Tex. Civ. App. 123, 66 S. W. 891.

Applying this rule, the court or jury might find, from the testimony, that the premises were impressed with the homestead status at the time of the conveyance, and, if it be so found, it follows that title could not pass without the joinder of Mrs. Flattery in the conveyance, untainted by fraud of any kind upon her rights.

[5] Plaintiffs in error next advance the proposition that no fraud upon Mrs. Flattery's rights is shown, but the recitals in the deed placed Miller upon notice that she undertook to convey for a cash consideration of $2,200; and the substitution of notes in payment of a portion of this amount by her husband and Miller was a fraud upon her.

In Cole v. Bammel, 62 Tex. 108, the husband had accepted a less amount than that stipulated in a deed conveying separate property of the wife. Discussing the effect of such act, it is said:

"The acceptance by her husband of a different sum, under such a state of facts and without her special authority, would not be binding upon her, nor amount to a ratification of the fraud in which he participated. The purchaser need not be an active participant in such a transaction in order to vitiate it, but it is sufficient if he had notice of its character before he parted with the purchase money. In principle, the false reading of a wife's deed, so that it shall appear to be upon a different consideration for what it actually recites, or the changing of the deed in this respect, does not differ from the fraudulent act of receiving from the purchaser a less amount of money than the wife had agreed to take for the land when examined by the officer. Such a proceeding imposes upon the wife a different contract from that which she had explained to her, and, in effect, forces upon her a conveyance she may have been unwilling to execute. A wife, unwilling to sell her separate estate for the price offered her, might be induced to part with it for a much larger sum. The larger sum is inserted in the deed, and she executes it willingly, and so acknowledges to the notary. This deed is placed in the hands of her husband to deliver to the purchaser on receipt of the consideration. Contrary to her wishes, it is delivered upon payment of the very price she had refused for the land; she is, in effect, defrauded into the execution of an instrument she was unwilling to sign, and the beneficial design of the statute is frustrated. * * * By placing in Stockton's hands a deed with an expressed consideration of $1,500, she notified all persons proposing to purchase that this was the price she was willing to take for the property. The instrument itself was the only evidence of the agency of the party having it in possession. It was the charter of his authority, and gave him no greater rights than would a power of attorney restricting the agent's power of sale to the event of his being able to do so for a specified sum. No one, upon reading it, had a right to conclude that the agent had a right to make any other terms than were made by the deed itself. It was a case of special agency to do a particular thing in a particular way. Persons dealing with such an agent must know that if a different act is done, or the one authorized is done otherwise than the power describes, he, and not the principal, must suffer if damage ensues to the latter in consequence of disobedience to his directions. Story on Agency, §§ 126, 224. * * * The statement of the consideration in the deed put him upon inquiry as to the power of Stockton to take a different sum. Had he pursued such inquiry to the proper source of information, he would have learned that Mrs. Cole had given Stockton no such authority, but was unwilling to take $1,000 for the land; and he must be held to have had full knowledge of that fact before he bought it. Wade on Notice, § 17."

To the same effect is Stallings v. Hullum, 79 Tex. 421, 15 S. W. 677, and Scoggin v. Mason, 46 Tex. Civ. App. 480, 103 S. W. 833.

In the light of the authorities noted, it must be held that the deed was delivered in fraud of the wife's rights.

[6-8] But it appears that the property has passed to Mrs. Moore, a purchaser for value, who acquired same in good faith, without any actual notice of the fraud practiced upon Mrs. Flattery, and the determination of her rights presents a question of greater difficulty. One claiming title to land is charged with notice of every matter affecting the estate which appears on the face of any deed forming an essential link in the chain of instruments through which he derives his title, and also with notice of whatever matters he would have learned by any inquiry which the recitals in those instruments made it his duty to pursue. Mrs. Moore is thus charged with notice of the recital of a cash consideration in the Flattery deed, and she testifies that she knew her father used the notes in question in paying for the property. At first glance, it would seem that she was thus placed upon inquiry and the duty imposed of ascertaining whether or not Mrs. Flattery had consented to and authorized the substitution of the notes in part payment of the cash consideration recited in the deed. In other words, that she was in exactly the shoes of her grantor. Miller had constructive notice only of the wife's understanding of the terms upon which she was conveying. Mrs. Moore likewise had this constructive notice. Having this notice, the courts have held, as indicated above, that Miller was charged with the duty of making inquiry and ascertaining the authority of the husband to depart from the terms of the wife's contract of conveyance, as evidenced by her deed. Mrs. Moore knew that her grantor had used these notes in part payment of the recited consideration, and, as stated, it would at first seem that she, too, was charged with a like duty of making inquiry and ascertaining the authority by which this substitution was made, but in one respect her position was quite different from that of her father. Her purchase of the property was made several months after the execution and delivery of the deed to her father, during which time he had been in peaceable possession and collecting the revenues thereof, and she had no notice or reason whatever to suspect that Mrs. Flattery was in any wise dissatisfied with the substitution of the notes. Under such circumstances, was not Mrs. Moore justified in assuming that such substitution was authorized by Mrs. Flattery, or at least that she had ratified the same? It seems to us, under such circumstances, that any reasonable person would not have deemed it necessary to make inquiry concerning the substitution.

In Hussey v. Moser, 70 Tex. 42, 7 S. W. 606, in discussing the question of estoppel upon a similar state of facts, Judge Gaines said:

"Knowing that, as a result of her own negligence, the deed had gone forth with all the appearances of a valid conveyance, it was her duty to denounce the fraud for the protection of third parties. Not having done this, and innocent third parties having purchased upon the faith of the deed, it would seem that the transaction combines all the elements essential to the estoppel, even of a married woman."

And in Link v. Page, 72 Tex. 592, 10 S. W. 699, it was said:

"We think, also, where the owner of real property negligently clothes another with the appar-

ent title to it, although the execution of the instrument which purports to convey the title may be obtained by fraud, and third parties being misled thereby innocently purchase and pay value for the property, he should be held estopped to deny the validity of the conveyance. This principle was announced by this court in the case of Steffian v. Bank, 69 Tex. 513 [6 S. W. 823], in which it is held that one who signs and acknowledges a conveyance 'to be delivered only upon condition may be estopped to set up the nondelivery by negligently permitting it to pass into the hands of the grantee."

To the same general effect is Spotts v. Whitaker, 157 S. W. 422, and Houston v. Hubbard, 37 Tex. Civ. App. 546, 85 S. W. 474, where it is held that innocent purchasers will be protected in case of unauthorized delivery of escrow deeds, where the negligence of the grantor brought about the unauthorized delivery. Applying the principles of estoppel recognized in the cases noted, we think the evidence shown by this record indicates that Mrs. Moore was entitled to protection as an innocent purchaser, and, under the facts, the trial court should have found that she had no constructive notice of the fraud practiced upon Mrs. Flattery, and, upon retrial, judgment should be rendered in her favor, unless some new facts be adduced to affect her with notice.

Under our view, a reversal and rendition of the judgment might properly be made, but, upon consideration of the record as a whole, it occurs to us that the end of justice will be better served by remanding for retrial; and it will be so ordered.

Reversed and remanded.