## COCKERELL v. CALLAHAM et ux.

(Court of Civil Appeals of Texas. Galveston. Nov. 1, 1923.)

1. **Mines and minerals** ⬡⇒55(8)—**Finding as to misrepresentation of character of mineral deed held unsupported by evidence.**

A finding that grantee under a mineral deed represented to grantors that the instrument was only a transfer of a royalty retained by them in a mineral lease to another *held* unsupported by evidence.

2. **Appeal and error** ⬡⇒1071(3)—**Finding unsupported by evidence will not justify reversal of judgment sustainable on other findings.**

A finding unsupported by evidence will not justify reversal of the judgment if sustainable on other findings.

3. **Homestead** ⬡⇒167—**Remains homestead after conveyance unless grantors had voluntarily abandoned it or acquired another homestead on which they resided.**

A homestead conveyed by the owners continues to be such, unless they voluntarily abandoned it before the deed was executed or acquired another homestead on which they resided at such time.

4. **Homestead** ⬡⇒181(3)—**Finding that homestead was not abandoned before conveyance held supported by evidence.**

Evidence *held* to support a finding that land conveyed had not been abandoned as a homestead by grantors when the deed was executed.

5. **Homestead** ⬡⇒119—**Requisites of acknowledgment of conveyance by wife stated.**

To constitute a sufficient acknowledgment by a wife of a conveyance of her homestead, the instrument must be explained to her by the officer taking the acknowledgment, who must ask her whether she willingly signed it for the consideration and purposes expressed and whether she wished to retract her signature.

---

**6. Acknowledgment ☞62(1)—Parol evidence admissible to show fraud or defect in acknowledgment of deed if grantee had notice thereof.**

Grantee is not bound to see that the officer taking the acknowledgment of the deed does his duty; but if he was present at the time and knows what was said and done by the officer, or had notice of fraud or defect in the taking or knowledge of circumstances which would put a prudent man on inquiry, it may be shown by parol evidence that the acknowledgment was not taken as required by law.

**7. Acknowledgment ☞59—Burden of proving fraud or defect in taking is on attacking party.**

The burden of proving fraud or a defect in the taking of an acknowledgment of a deed is on the attacking party, the presumption being in favor of the truth of a sworn officer's certificate.

**8. Acknowledgment ☞55(2)—Certificate of due acknowledgment of deed by wife cannot be impeached by her in absence of fraud, mistake, or imposition.**

A certificate of a notary showing due acknowledgment of a deed by a married woman cannot be contradicted or impeached by her on the ground that the acknowledgment was taken hurriedly without explanation of the deed or examination apart from the husband, in the absence of fraud, mistake, or imposition.

**9. Acknowledgment ☞62(4)—Finding that acknowledgment of deed by wife was not taken as required by law held supported by wife's testimony.**

A wife's testimony that a deed acknowledged by her was not explained to her by the notary and that he did not ask her if she willingly signed it or wished to retract her signature *held* admissible, in a suit to cancel the deed, and sufficient to support a finding that her acknowledgment, though in due and legal form, was not taken as required by law.

Appeal from District Court, Grimes County; Carl T. Harper, Judge.

Suit by W. B. Callaham and wife against E. Cockerell. Judgment for plaintiffs, and defendant appeals. Affirmed.

Buffington & Leigh, of Anderson, and Gill, Jones, Tyler & Potter, of Houston, for appellant.

J. M. Brownlee, of Madisonville, and S. W. Dean, of Navasota, for appellees.

LANE, J. W. B. Callaham and wife, and the Empire Gas & Fuel Company brought this suit against E. Cockerell, praying for the cancellation of a certain mineral deed purporting to have been executed by Callaham and wife to E. Cockerell on the 3d day of November, 1917, conveying to Cockerell 116½ acres of land.

For cause of action the plaintiffs alleged: (1) That said deed was void for want of consideration and mutuality; (2) that the land in controversy was at the time of the execution of said deed the homestead of the grantors, and that notwithstanding the fact that Mrs. Callaham appeared before the notary public for the purpose of acknowledging said deed, and notwithstanding the further fact that the certificate of acknowledgment is in due and legal form, nevertheless it is in fact true that the separate acknowledgment of the wife was not taken as required by law in that: First, said deed was not explained to her by the notary; second, the notary did not ask her if she had willingly signed the deed, or if she wished to retract her act in signing the same; and, third, that the mineral deed was obtained by false representations on the part of the defendant, E. Cockerell, as to the contents of the instrument in two respects, viz.: That the instrument constituted merely a conveyance of a one-eighth royalty interest reserved in an existing lease, and that Cockerell's rights under the instrument would expire with a certain lease theretofore executed to run for five years, and also that if oil and gas were discovered on the premises during the life of the lease Cockerell would immediately pay to grantors the sum of $2,912.50; whereas, the instrument as executed constituted a conveyance of all the mineral rights in the land subject to the existing lease, and provided for the payment of $2,912.50 out of one-half of the royalty oil and gas thereafter produced and marketed from the land.

The defendant answered by general denial and cross-action to remove cloud from his title. Before the trial the cause was dismissed as to the plaintiff Empire Gas & Fuel Company, and was prosecuted alone by the plaintiffs, W. B. Callaham and wife, the original grantors.

The cause was tried before the court without a jury and judgment rendered in favor of plaintiffs, canceling the mineral deed in question.

The findings of fact of the trial court material to the issues presented by this appeal and his conclusion of law are as follows:

"(1) At the time Callaham and his wife signed the instrument, they understood, and it had been represented to them by E. Cockerell, that it was a transfer to him of a certain one-eighth royalty retained by them in the mineral lease which had previously been executed by them and was then owned by the Empire Gas & Fuel Company, and which lease expired at the end of five years from the date thereof in case oil or gas or other minerals were not found by the holder of said lease within that time. The said lease being to J. E. Allen, trustee, dated November 4, 1916.

"(2) The notary public, when he took Mrs. Callaham's acknowledgment, asked her if she knew what the instrument was, and she, believing that she had been correctly informed by

her husband of the contents and purport of the instrument, answered yes, but it was not further explained to her by the notary public, nor did he ask her if she wished to retract it.

"(3) The cash consideration of $29.25 was paid by E. Cockerell to W. B. Callaham.

"(4) The tract of land described in the instrument hereinbefore set out was at the time of the execution of same, and has continuously since said time been, the homestead of W. B. Callaham and his wife, Ada Callaham, and their children.

"(5) E. Cockerell was present when the acknowledgments were taken and knew just how they were taken by the notary public.

"Conclusion of Law.

"The law and the facts are with the plaintiffs, and I hold the instrument void."

Said findings 1, 2, 4, and 5, as well as the conclusion of law, are attacked by appellant as being unsupported by any evidence.

It was shown that on the 4th day of November, 1916, Callaham and wife had executed and delivered to one J. E. Allen, trustee, an ordinary oil lease, conveying to him and his assigns seven-eighths of the minerals in and under the land in question, the same to run for the term of five years, and so long thereafter as oil and gas were produced in paying quantities. This lease had been transferred to the Empire Gas & Fuel Company.

In the first clause of the deed in controversy, which was executed on the 3d day of November, 1917, it is recited that—

"In consideration of the sum of twenty-nine and $^{25}/_{100}$ ($25.25) dollars, cash, in hand paid by E. Cockerell, receipt whereof is hereby acknowledged, and in consideration of the sum of two thousand nine hundred twelve and $^{50}/_{100}$ ($2,912.50) dollars, to be paid to us when oil is produced and marketed from said land, out of one-half of the oil royalties as fast as produced and marketed, we have and do by these presents hereby, grant, bargain, sell and convey unto the said E. Cockerell of Harris county, Texas, his heirs and assigns, the fee-simple title to the royalties and mineral rights in and to all that certain tract, piece or parcel of land situated in the aforesaid county and state, to wit."

The recital is followed by a description of the land in controversy by metes and bounds, and as all the land described in the lease from grantors to J. E. Allen, trustee, of date November 4, 1916. Following this, the deed makes the following recitals:

"In the event the present lessee, its successors or assigns, fails to drill on said land, or fails to carry out the terms and conditions of said lease, this instrument shall cover and convey the fee simple title to the entire minerals and royalties in said land, with the right to lease, produce, sell and market the same, subject to the additional payment hereinabove provided. There is expressly granted and conveyed to grantee, his heirs and assigns, all rights necessary and convenient for the development, operation and maintenance of said premises, the rights of ingress and egress at all times, and the use of as much of the surface thereof as may be necessary to carry on said operations to successfully develop, operate and maintain said leased premises for all minerals of every nature.

"Subject to the rights herein conveyed, grantors shall have the right to use, cultivate, enjoy, sell and convey said premises, and expressly reserve herefrom the surface rights of said premises, and the rental payments provided in said lease aforesaid, which said rental payments shall remain the property of, and be paid to grantors named in said lease, their heirs and assigns.

"It is intended by this instrument to convey to grantee the fee simple title to the minerals and royalties in and under said land, subject to the additional payment when oil is produced and marketed, as aforesaid, and without obligation on part of the grantee, his heirs or assigns, to drill thereon for oil, gas or other minerals.

"To have and to hold said premises together with all and singular the appurtenances thereto in anywise belonging unto the said E. Cockerell, his heirs and assigns; and we do hereby bind ourselves, our heirs and assigns, to warrant and forever defend, all and singular, the said premises unto the said E. Cockerell, his heirs and assigns, against every person whomsoever lawfully claiming, or to claim the same, or any portion thereof.

"Witness our hands on this the third day of November, A. D. 1917.

"[Signed]   W. B. Callaham.
              "Ada Callaham."

Attached to the deed is the certificate of F. M. Davis, a notary public in and for Grimes county, Tex., in every respect in due and legal form. It is specifically recited in said certificate that Mrs. Ada Callaham was examined separately and apart from her husband; that the instrument was, by the notary, fully explained to Mrs. Callaham; and that after such explanation she acknowledged the instrument to be her act and deed and that she declared that she had willingly executed the same for the purposes and consideration therein expressed, and that she did not wish to retract it.

Testifying relative to the alleged fraud, W. B. Callaham stated that appellant, Cockerell, handed him the instrument, but that he did not read it; that Cockerell told him that whenever they produced oil there, that he would pay him the $25 per acre for the land, and that he would pay for all damages caused by drilling; that he told him that the deed so provided; that he would not have signed the deed had he understood that he was to be paid out of one-half of the royalties; that Cockerell did not say what quantity of oil would have to be produced, but said whenever they found oil he would pay the balance of the consideration; that Cockerell did not say anything about how long this lease was to run, nor what he was conveying, but he thought he was only giv-

ing a lease for five years; that he relied upon the representations made by Cockerell and did not read the instrument, nor was it read to him; that while Cockerell did not say anything about limit of time, he did tell him that when oil was produced he would pay him (Callaham) $25 per acre cash for the land; that Cockerell told him that he (Callaham) was, by said instrument, selling the mineral rights in the land, and that he paid him the $29.25 cash consideration named in the deed; that the sole trouble with the instrument is that it did not state that the $2,900 was to be paid in cash at the time oil was produced, but it does state that such payment was to be paid out of the royalties.

His is the only testimony tending to prove that appellant made any of the false representations, as to the contents of the deed, alleged by the plaintiffs.

[1] While this testimony is probably sufficient to support a finding that appellee had represented to W. B. Callaham that the deed provided for the payment of the $2,900 mentioned therein in cash as soon as oil was produced, and that such representation was untrue, the court has made no such finding. The finding of the court that E. Cockerell represented to Callaham and wife that the instrument signed by them was a transfer only of the one-eighth royalty retained by them in the mineral lease given by them to J. E. Allen, trustee, as contended by appellant, is unsupported by any evidence.

[2] The foregoing conclusion will not, however, justify a reversal of the judgment if it can be sustained upon other findings of the court.

In addition to appellees' allegation of fraud they contend, as has already been shown, that the land in controversy was, at the time of the execution of the mineral deed to appellant, their homestead, and that therefore said deed was and is void, in that, notwithstanding the certificate of the notary who attempted to take the acknowledgment of the wife was in legal form, said notary did not in fact explain said deed to her, nor did he ask her if she had willingly signed the same, and if she wished to retract it.

Appellant contends, however, that the judgment should be reversed, in that it is shown by the undisputed evidence that at the time of the execution of said deed appellees had acquired an urban home in the town of Bedias, and that as a matter of law had, prior to the execution of the deed, abandoned their former homestead, and therefore the deed of the husband alone was and is sufficient to convey, and that it did convey the minerals in the land in question to appellant; but if he is mistaken as to said abandonment proposition, still he says that the judgment should be reversed, in that the certificate of the notary who took

the acknowledgment of the wife was in legal form, and there was no evidence other than the testimony of the wife tending to falsify the certificate of the notary, and that testimony of the wife was inadmissible and insufficient to impeach said certificate.

That the land in question was the homestead of the appellees prior to their purchase and occupancy of the Bedias property is conceded, and we are now to consider: (1) Was there sufficient evidence to support the finding of the court that the land in controversy was, at the time of the execution of the mineral deed, the homestead of appellees? (2) If said land was such homestead, was there any probative evidence to support the finding of the trial court that the acknowledgment of the wife was not taken in the manner and form as required by law, and that therefore the deed is void?

An affirmative answer to these questions would require an affirmance of the judgment at our hands.

[3] The land in controversy being the homestead of appellees continued to be such unless they had, prior to the execution of the deed, voluntarily abandoned the same as such homestead, or had acquired another homestead upon which they resided at the time of the execution of said deed.

W. B. Callaham testified that at the time of the execution of the deed in question he and his family were living in a house owned by him situated on about one-half acre of land in the town of Bedias (Grimes county, Tex.), and had been so living for about four or five years, but that he and his wife had not abandoned the 116½ acres of land as their homestead; that they were using the land for homestead purposes, cultivating it and getting wood off of it for family use. He testified on cross-examination as follows:

"Bedias is located in Grimes county, Tex., in the northern end of Grimes county. It is divided into lots and blocks. The property is sold as lots and blocks. I traded for the lot I owned there. I traded part of the place down there. At the time I traded, I was living on this place that is in controversy. I moved from there to this lot in Bedias. This lot in Bedias had a house on it. I was living in it at the time this instrument was executed, and my wife was living there also. I had one-half an acre of land at Bedias with a small house on it. Yes, sir; there were outhouses."

On being recalled, he testified that he moved to Bedias to send his children to school; that he left a part of their furniture on the 116½ acres when he moved to Bedias, and it had remained there all the time. Testifying further, he said:

"Yes, sir; we have farmed the place all the time. Mrs. Callaham has gone up there and stayed with me a part of the time."

He testified that he sold 3½ acres of his farm to Mr. Thomas on which his dwelling

house was situated, but he had another house on the farm in which he kept a part of his furniture for the first year, and after the first year he let a negro renter occupy the same.

Mrs. Callaham testified, relative to the homestead, as follows:

"We claimed this 116½ acres as our homestead. We just were in Bedias temporarily. We have never had any homestead at any other place at any time since the purchase of this land."

Again:

"We moved from this place to Bedias. We lived in Bedias three or four years. While we were living at Bedias, we were farming on this place. That was the way we made our living. From Bedias we moved to Shiro. We are not on this farm now. We are living about 10 miles from it. The farm is being worked by a negro, my son, and my husband. We went to Bedias because it was sickly on that farm. We went to Shiro because we wanted to. We do not own a place in Shiro. We are renting the place there. All of this time we have claimed this farm as our homestead."

W. B. Callaham, being recalled, testified:

"That property that I bought in Bedias was not divided into lots and blocks. It was acreage property. It was one-half an acre. It is one-half a mile from the depot. It is near the Methodist cemetery, right at the Methodist cemetery, up above where the old town used to be, right where the old schoolhouse used to be, and it was a half acre of land. The old town was not cut up in lots and blocks. There were no streets going around my house. I joined Mr. Frank Steward. He has opened the place there since I sold my place. When I lived there, there were no streets there. It is well settled there, and there were some houses close to me. Mr. McDonald was my closest neighbor, and Mr. Frank Steward was the next. Mr. Steward lived about as far as from here to the depot, and Mr. McDonald was right across the road. The cemetery was between me and the old Robinson place."

[4] Had the trial court found from the evidence that appellees had abandoned their former home and acquired an urban home, we would not disturb such finding; but we are not prepared to hold that there was no probative evidence to support the finding of the court that said former home had not been abandoned at the time of the execution of the deed to appellant.

The only witnesses who testified as to whether or not the notary took the acknowledgment of Mrs. Callaham in the manner as required by law were F. M. Davis, the notary, and Mrs. Callaham and appellant, E. Cockerell.

The only statement made by the notary relative to the manner of taking Mrs. Callaham's acknowledgment was in answer to the following question:

"State whether or not you explained that instrument to Mrs. Callaham? Answer: "I think I asked her whether or not Mr. Callaham had told her what it was."

Mrs. Callaham testified as follows:

"When the notary public brought this instrument up there for me to sign, he said, 'I guess you understand it.' And I said: 'Yes, sir; we have all talked about it.' I thought it was like the other one was, and he did not read it there, and I just signed it. I do not remember whether he told me that it was a sale of the mineral rights on that land. He did not tell me how the consideration was to be paid. No one told me how it was to be paid. I didn't know at the time how it was to be paid. I have never understood how it was to be paid. I have never understood how much it was to be paid."

Testifying further, she said that they told her that the instrument was a lease; that she would not have signed it had she been told that the consideration was $29.25 cash, and $2,912.50 to be paid out of one-half of the royalties; that Mr. Davis said nothing to her about it being a sale of the mineral rights; that nothing was said about the deed as she remembered; that Mr. Davis just carried the deed in the house and asked her to sign it; that he did not read the acknowledgment to her.

On cross-examination she testified that she could not remember whether Mr. Davis told her the instrument was a mineral sale or that it was a lease; that he did not tell her any of its terms; that Mr. Davis did not ask her if she had willingly signed the instrument, or if she wished to retract it.

Appellant, E. Cockerell, testified that he was present when Davis took the acknowledgment of Mrs. Callaham, and that he (Cockerell) read the deed to her, and that Davis explained to her that she was selling the mineral rights and what it was, and asked if she understood it, and she said she did.

[5] The law of this state provides that to constitute a sufficient acknowledgment of a wife in the sale of her homestead, the instrument of conveyance must be explained to her by the officer taking the acknowledgment; that she must be asked by such officer whether she had willingly signed the instrument for the consideration and purposes therein expressed, and whether she wished to retract it.

[6] In 1 Corpus Juris, § 271, p. 891, the following rule is announced:

"As between the immediate parties to a conveyance, evidence is admissible to impeach the certificate for fraud, duress, or imposition in which the grantee participated, or of which he had notice before parting with his money."

[7] The rule above stated does not apply, however, to one who is not present when the acknowledgment, regular on its face, was taken, unless he had notice of the alleged

fraud or defect in the taking of same, or had knowledge of circumstances such as would put a prudent man on inquiry as to the manner in which the acknowledgment was obtained. A purchaser is not bound to see that the officer does his duty in taking the acknowledgment; but, if he is present at the time of such taking and knows just what was said and done by the officer, it may be shown by parol evidence that the acknowledgment was not taken in the manner required by law. The burden of proof, however, in such case, is upon the attacking party; the presumption being in favor of the truth of the certificate of a sworn officer.

[8] It is, we think, settled by the weight of authority that where a wife appears before an officer for the purpose of acknowledging the execution of a deed and the certificate of the officer in such case is on its face in manner and form as required by law, the testimony of the wife, the acknowledging party, is not sufficient to impeach said certificate in the absence of allegation and proof of fraud or imposition in obtaining it.

In the instant case fraud and imposition were alleged, and we are not prepared to say such allegations were unsupported by evidence.

There is much confusion as to what may be shown by the testimony of a married woman in an attempt to cancel her acknowledgment, on its face in regular and legal form. But we gather from the numerous decisions of our appellate courts, cited in volume 1 Encyclopedia Digest of Texas Reports, pp. 108 to 111, that the general rule applicable thereto is as follows:

"The certificate of the officer to the separate acknowledgment of the wife to a deed of conveyance is conclusive of the facts therein stated, except in cases of fraud, mistake or imposition; and that the rights of third parties will not be affected by such fraud, mistake or imposition, unless they participated therein or had notice thereof."

In the volume above referred to, page 109, it is said:

"It is well settled that although the proper certificate may be attached to the deed of the wife, it may be avoided by her if it does not speak the truth or the deed or acknowledgment were obtained by fraud or force, provided the purchaser is chargeable with notice of either of these facts before the payment of the purchase money. Cole v. Bammel, 62 Texas 108, 112; Stallings v. Hallum, 79 Texas, 421, 15 S. W. 677; Davis v. Kennedy, 58 Texas 516; Wiley & Co. v. Prince, 21 Texas 637; Adams v. Pardue (Civ. App.), 36 S. W. 1015; affirmed in 93 Texas 724, no op.; Texas Land, etc., Co. v. Blalock, 76 Texas 85, 13 S. W. 12. "But the certificate of the officer showing the due acknowledgment of a deed by a married woman cannot be contradicted or impeached on the ground that the acknowledgment was taken hurriedly, without an explanation of the deed or examination apart from the husband, where no fraud is alleged. Brand v. Colorado Salt Co., 30 Texas Civ. App. 458, 70 S. W. 578, affirmed in 97 Texas, no op."

[9] Having reached the conclusion that under the weight of authority the testimony of Mrs. Callaham, attacking the truth of the certificate of the notary who took her acknowledgment, was admissible, and having reached the further conclusion that her testimony was sufficient evidence to support the finding of the trial court that her acknowledgment was not taken in manner and form as required by law, we feel constrained to affirm the judgment, and it is so ordered.

Affirmed.