L. M. WILEY & CO. v. G. W. PRINCE AND WIFE.

Although a wife may, under her power of alienation, mortgage her property to pay the debts of her husband, without any consideration enuring to herself, yet every such transaction should be scrutinized with an anxious watchfulness, and caution, and dread of undue influence.

The certificate of the officer taking the acknowledgment of the wife to a deed of conveyance, is conclusive of the facts therein stated, but may be rebutted by proof of fraud, mistake or imposition.

Where the property is alienated in fee, and a consideration passes, it is necessary for the security of titles, that the certificate of the officer should be held conclusive, unless the fraud or wrong charged to impeach the alienation were known to the grantee, or the circumstances were such as should have impelled him to an inquiry which he neglected. *It seems,* to say the least, to be doubtful whether this be the rule where no consideration passes, and where the wife becomes the surety to pay the debts of the husband antecedently contracted.

The rules in relation to duress, as against strangers apply with redoubled force in favor of a wife. Acts and circumstances, which would not relieve a stranger, would be duress as regards the wife.

Appeal from Nacogdoches. Tried below before Hon. A. O. W. Hicks.

Suit upon two notes, executed by George W. Prince, secured by a mortgage, executed by said George W. and Sarah, his wife, upon separate property of said wife.

On the trial, the appellants read in evidence to the jury the notes declared on, the mortgage with its authentication certificate of privy examination of the wife by the Notary Public, and the certificate of record, and closed.

The appellees introduced a witness who testified that one Charles Keith was the accredited agent of the appellants; that about the 1st of April, 1854, Keith came to the residence of appellees, in company with George W. Prince, the husband: that Prince went into the room where his wife then

was, Keith and the witness remaining in an adjoining room, between which rooms there was a door. Witness heard Geo. W. Prince say to his wife that he wanted her to sign and execute a mortgage upon a tract of land, in which she had a separate interest, the same described in the mortgage, to secure a debt he was owing to persons from whom he had purchased goods; that by so doing she would enable him to maintain his credit, purchase more goods, and continue his business. Mrs. Prince said to him that he had gone through with his property, and she did not intend he should go through with hers, and she would sign no mortgage. Upon this Prince commenced using violent language, and said if she did not give the mortgage asked for that he would burn her house down, and carry her children off. Witness does not know whether Keith heard the language used by Prince, but thinks he did. Prince then came into the room where he and Keith were, and told Keith that his wife refused to give the mortgage, and desired him to go in the room where she was and talk with her. Keith went in, and told her if she would give the mortgage, it would enable her husband to obtain credit in New York, and a further stock of goods, and continue his business; she refused in the same words which she used to her husband, and Keith left her. Mrs. Prince was at the time suffering from a sprained ankle. Afterwards on the same day witness heard Prince say, in presence of Keith and one or two others, that his wife should give the mortgage, or he would burn the house down and carry off the children. Another witness testified that he heard Prince make the same threat that he would burn down the house and carry off the children if his wife did not sign the mortgage. In reply, the appellants introduced J. R. Clute, the Notary, who took Mrs. Prince's acknowledgment, who testified that the examination was made in the usual way; she signed the mortgage after it was read to her, and made the acknowledgment as stated in the certificate; saw no reluctance on her part to sign the same.

Wiley & Co. v. Prince.

There was a verdict and judgment against Geo. W. Prince for the amount of the notes and interest, and further that "Sarah Prince, his wife, did not of her own free will and accord execute the mortgage," upon which judgment was rendered for her cancelling and annulling the mortgage.

*H. C. Hancock*, for appellants.

*Geo. F. Moore*, for appellee.

HEMPHILL, CH. J.   This is one of the numerous instances in which the folly fraud or violence of husbands, and the rapacity of creditors, have extorted from the wife a mortgage of her property to secure the debts and speculations of the husband.   Such transactions must be guarded against with the most jealous vigilance, or they will defeat the benefits which the wisdom and policy of the law have secured to the wife.   Under our former jurisprudence, the wife could not become a surety for the husband.   And although we have held that since the introduction of the Common Law, the wife, under her power of alienation, might mortgage her property to pay the debts of the husband without any consideration enuring to herself, yet, in the language of the books, every such transaction should be scrutinized with an anxious watchfulness and caution, and dread of undue influence.   (2 Story Eq. Sec. 1395 ; 2 Roper, Husband and Wife, 216, 217, 222, 224 ; Pybus v. Smith, 1 Ves. Jr. 189 ; Bradish v. Gibbs, 3 Johns. Chan. 549.)

There is no relation in which more influence, more dominion can be exercised by one person over another than that exercised by the husband over the wife.   They are separate in this State as to property, but in other respects the legal existence, the powers of the wife, are merged in the husband, and his conduct in obtaining gifts or suretyships from her pro-

perty should therefore be watched with the most scrupulous attention.

We have held that the certificate of the officer taking the acknowledgment of the wife to a deed of conveyance is conclusive of the facts therein stated, but may be rebutted by proof of fraud, mistakes or imposition, (Hartley v. Frosh, 6 Tex. R.; Burtis v. Shelby, 18 Tex. R.;) and it has been intimated in some of the cases that to invalidate the act as to third persons, a knowledge of the fraud, imposition, &c., must be brought home to the grantee, and this rule as to notice was in effect given in charge by the Court below. Where the property is alienated in fee, and a consideration passes, it is but reasonable, and it is necessary for the security of titles and the protection of property that the certificate of the officer should be held as conclusive, unless the fraud or wrong charged to impeach the instrument were known to the grantee, as the circumstances were such as should have impelled him to an inquiry which he neglected. But can this be the rule where no consideration passes? Where the wife becomes the surety to pay the debts of the husband, antecedently contracted? To say the least, this is doubtful. Under the circumstances, the dependent, defenceless situation of the wife, the character and purpose of the obligations, &c., the rule should be that the creditor takes the security at the risk of its nullity from the malign influences under which it was created; that for his own safety he must inquire into the circumstances surrounding the transaction, and before he touches the instrument he opened that it was not engendered in fraud and iniquity. But this point need not be decided in this cause. Here the agent of the creditors was not only apprized of the brutal threats and violence of the husband, but he conspired with him by his importunities to defraud the wife, and convert her lands, through the husband, to the benefit of his creditors.

At the time of this transaction this unfortunate wife was in

her bed of suffering, from a sprained ankle. The husband, leaving the agent of the creditors and the witness in an adjoining room, importuned his wife most earnestly with flattering tales that by this mortgage he could maintain his credit, purchase more goods, and continue his business, and when she refused, for the most excellent reason, that he had gone through with his property, and she did not intend that he should go through with hers, he burst forth in violent threats that if she did not give the mortgage, he would burn her house down and carry off her children—threats alarming and agonizing to the heart of a wife and of a mother. The witness heard, and he thought that Keith also heard, these threats, when the husband coming out, the agent, at his request, went into the room and plied the wife with his tale of glozing deception, that the husband could get credit and a further stock of goods, &c., which, by the way, was not proven at the trial. The wife giving him the answer that she had before given to the husband, he retreated but on another occasion, the same day, the husband assured the agent that if she did not give the mortgage, he would burn the house and carry off the children.

There was another witness who heard threats of a similar character. Can there be any doubt of the invalidity of this mortgage that it was the offspring of violence? That no such free assent by the wife was given as the law requires for the validity of a contract?

It is a matter of no consequence that the deed was not made for perhaps a day or two afterwards. There had been violence and outrage, and the jury might very well find that the undue influence continued up to the time of the act.

The rules in relation to duress as against strangers, apply with redoubled force in relation to a wife. In fact, acts and circumstances which would not relieve a stranger from his act, would be duress as regards the wife.

The jury were to judge from all the circumstances, whether

there was undue influence whether the assent of the wife was free.

They found, and we believe justly, that it was not free, and it is ordered that the judgment be affirmed.

Judgment affirmed.