**STEWART et al. v. MILLER et al.  (No. 157.)***

(Court of Civil Appeals of Texas. Waco. Feb. 26, 1925. Rehearing Denied April 2, 1925.)

**1. Deeds ⚖78—Evidence held to require submission to jury of issue of decedent's mental incapacity when she executed deeds in consideration of love and affection.**

Evidence *held* to require submission to jury of issue of decedent's mental incapacity when she executed deeds conveying her realty to certain of her children in consideration of love and affection.

**2. Deeds ⚖68(1½)—Grantor's capacity to execute deeds was dependent on her ability to understand nature and effect of her act and to exercise her will in relation thereto.**

Grantor's capacity to execute deeds in consideration of love and affection depended on her ability to understand nature and effect of her acts and to exercise her will in relation thereto.

**3. Deeds ⚖203—Evidence of grantor's mental and physical condition held admissible on issue of her mental capacity.**

Evidence of grantor's mental and physical condition before and after executing deeds in consideration of love and affection was admissible on issue of her mental capacity.

**4. Deeds ⚖78—Only evidence tending to show grantor's incapacity considered in determining whether issue of her capacity should be submitted to jury.**

In determining whether issue of grantor's mental capacity to execute deeds in consideration of love and affection should be submitted to jury, only evidence tending to show her incapacity should be considered.

**5. Deeds ⚖76—Deed executed as result of undue influence may be avoided.**

Deed executed as result of undue influence may be avoided.

**6. Deeds ⚖72(2)—Issue of undue influence presupposes sufficient mental capacity to make valid conveyance.**

Though grantor's mental power may be considered on issue of undue influence along with other evidence, such issue presupposes sufficient capacity to make valid conveyance.

**7. Deeds ⚖72(1) — Undue influence proved only by showing it caused execution of deed.**

Undue influence is proved only by proof that such influence was exercised, and that it subverted and overpowered grantor's will and caused execution of conveyance which grantor would not have executed but for such influence.

**8. Evidence ⚖269(3)—Grantor's declarations after execution and delivery of deed incompetent to prove undue influence.**

Grantor's declarations, after execution and delivery of deed executed in consideration of love and affection, are not competent to prove that conveyance resulted from exercise of undue influence.

**9. Deeds ⚖211(4)—That some of grantor's children or grandchildren were not provided for in deeds executed in consideration of love and affection held not to prove undue influence.**

That some of grantor's children or grandchildren were not provided for in deeds conveying her property to children in consideration of love and affection does not prove execution thereof was procured by undue influence.

**10. Deeds ⚖78—Evidence held insufficient to require submission to jury of issue of undue influence in procuring deeds in consideration of love and affection.**

Evidence *held* insufficient to require submission to jury of issue whether deeds to certain

of grantor's children, in consideration of love and affection, were procured by husband's undue influence.

**11. Evidence ☞268, 269(3)—Grantor's declarations after executing deeds held admissible on issue of mental capacity, but not to prove husband's undue influence.**

Grantor's declarations, after executing deeds to certain children in consideration of love and affection, that she knew something had been done but did not know what, and that it was not her wish to have daughter not provided for in deeds left out of division of her property, were admissible on issue of grantor's mental capacity, but were incompetent to prove husband's undue influence.

**12. Evidence ☞202, 269(1)—Declarations of grantor's husband, two years after execution of deeds, held not competent to show undue influence nor as admissions against interest.**

That grantor's husband, two years after execution of deeds to children in consideration of love and affection, declared he was satisfied and intended deeds to stand, was not competent to prove that execution of deeds was procured by his undue influence, nor as admissions against interest.

**13. Deeds ☞211(4)—Undue influence may be established by circumstantial evidence reasonably satisfactory and convincing.**

In absence of direct evidence, undue influence may be established by circumstances reasonably satisfactory and convincing and not equally consistent with absence of such influence.

**14. Acknowledgment ☞55(2)—Grantee under married woman's deed in consideration of love and affection cannot deny right of grantor or her heirs to impeach certificate of acknowledgment.**

Grantee, accepting deed executed by married woman in consideration of love and affection, without notice of falsity of statutory certificate of acknowledgment necessary to make it effective, cannot deny right of grantor or her heirs to impeach truth thereof, in absence of equitable ground growing out of action by grantee in reliance thereon, such as actual occupancy and valuable improvements.

**15. Acknowledgment ☞37(1) — Married womans' statutory acknowledgment on deed proved only by certificate of officer taking it, or by decree of court correcting defect therein.**

Fact of statutory acknowledgment of married woman on deed conveying her property, required to make deed valid, can be proved only by certificate of officer taking it or by decree of court correcting defective certificate where proper acknowledgment was actually made.

**16. Acknowledgment ☞55(2)—Statutory certificate of acknowledgment of married woman's deed held conclusive unless impeached in manner prescribed by law.**

Statutory certificate of acknowledgment of married woman on deed under hand and seal of officer taking it is conclusive evidence of facts recited therein, unless truth thereof is impeached in manner prescribed by law.

**17. Acknowledgment ☞55(2)—Statutory certificate of acknowledgment of married woman on deed is conclusive in favor of grantee in good faith and for valuable consideration.**

Statutory certificate of acknowledgment of married woman on deed conveying her property is prima facie evidence of facts therein recited, and is conclusive in favor of grantee in good faith for valuable consideration who is not chargeable with notice of falsity thereof.

**18. Acknowledgment ☞55(2)—Act of officer in falsely certifying that married woman's acknowledgment to deed complies with statute is fraud on grantor.**

Act of officer, taking acknowledgment of married woman to deed, in falsely certifying that he has complied with statutory requirements, is not only reprehensible and penal under Pen. Code 1911, art. 358, but is in itself fraud on grantor, and certificate is not conclusive in favor of grantee having knowledge of falsity.

**19. Action ☞46 — Plaintiff may establish equitable right in land and recover title and possession thereof in same suit.**

Plaintiff asserting equity which, if established, will entitle him to recover land or interest therein, may establish such right and recover title to and possession of land in one suit.

**20. Parties ☞25—All defendants need not have interest in all matters in controversy, but it is sufficient if each has interest in some of matters connected with others.**

It is not necessary that all defendants have interest in all matters in controversy, but it is sufficient if each has interest in some of matters connected with others.

**21. Cancellation of instruments ☞35(1)— Partition ☞48 — Quieting title ☞30(3) — Grantor's heirs who received advancements held necessary parties to suit.**

Grantor's heirs who received advancements which precluded them from participating in division of grantor's land were necessary parties to suit by other heirs to cancel deeds conveying land to certain children in consideration of love and affection, for removal of cloud, and for partition according to laws of descent and distribution.

**22. Evidence ☞506—Expert opinion evidence that grantor had sufficient mental capacity to transact business held inadmissible.**

Opinion testimony of physician that grantor had sufficient mental capacity to transact any business fully explained to her *held* inadmissible as opinion of grantor's legal capacity to transact business, as distinguished from capacity to understand nature and effect of her act in transacting such business.

**23. Evidence ☞510—Expert opinion evidence that grantor had sufficient mental capacity to understand nature and effect of her act held properly admitted.**

Opinion testimony of physician that grantor had sufficient mental capacity to understand nature and effect of her action in transacting busi-

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

ness matter fully explained to her *held* admissible as involving question of fact only.

**24. Witnesses** ©⇒135, 159(14)—**Neither parties to action between deceased grantor's heirs were competent to testify to any transaction with decedent including her acts, conduct, and mental condition.**

Under Rev. St. art. 3690, neither parties to action by heirs of deceased grantor to cancel deeds to certain children in consideration of love and affection were competent to testify to transactions with grantor, including her acts, conduct, and mental condition based on observation.

Appeal from District Court, Hill County; Horton B. Porter, Judge.

Suit by Mrs. Lucile Stewart and others against Luther Miller and others. Judgment for defendants, and plaintiffs appeal. Reversed and remanded.

Stickley & Fitzhugh, of Memphis, Tenn., and Collins, Dupree & Crenshaw and Frazier & Averitte, all of Hillsboro, for appellants.

Atkins & Van Dyke, Dudley Porter, Lewis & Rhodes, and Bryant & Bryant, all of Paris, Tenn., Geo. A. Titterington, of Dallas, and Wear, Wood & Wear, of Hillsboro, for appellees.

GALLAGHER, C. J. This is an appeal from a judgment of the district court refusing to set aside certain deeds. Appellants, Mrs. Lucile Stewart, joined by her husband, for herself and as guardian and next friend for her minor brothers and sisters, Joe Johnson, Wesley Johnson, Minnie Johnson, and Mary Johnson, were plaintiffs in the trial court and will be so designated and referred to here. Luther Miller, Mrs. Ethel Simmons, a widow, Mrs. Merle Oliver, and Miss Ruth Miller were defendants in the trial court and will be so designated and referred to here. Dr. A. A. Oliver, the husband of Mrs. Merle Oliver, was joined as defendant. The John Hancock Mutual Life Insurance Company was also joined as a defendant, plaintiffs alleging that said company held a mortgage on a tract of land covered by one of the deeds involved in this suit. The case was tried before a jury. The court instructed a verdict for the defendants, and upon the return of such verdict rendered the judgment here presented for review. The facts will be set out in connection with each separate issue discussed.

Plaintiffs contended that the court erred in instructing a verdict for defendants. They base this contention upon their claim that Mrs. Minerva A. Miller, one of the grantors in said deeds and the owner in her own separate right of the property conveyed thereby, was at the time of the execution of the same mentally incapable of understanding the nature and effect of her act in so executing the same.

Mrs. Minerva Miller and Sam A. Miller were husband and wife and the parents of defendants and grandparents of the plaintiffs in this case. They also had an adult son named Cooper Miller, and an older married daughter named Emma Daniels. Mrs. Miller at the time of the execution of said deeds resided with her husband and family in the state of Tennessee. The grantees in said deeds, respectively, were her four youngest children. Plaintiffs were the children of an older daughter, then deceased. The property conveyed by said deeds was, so far as shown, the only property owned by Mrs. Miller in her own right. Each of said deeds recited love and affection as the sole consideration therefor, and retained a life estate in the land conveyed thereby in Mr. and Mrs. Miller and conveyed the remainder only in fee to the respective grantees therein. Prior to the execution of said deeds, the oldest son, Cooper Miller, had received substantial gifts or advances from his father. None of the same, however, were shown to have come from the estate of his mother. Shortly after Mrs. Daniels learned of the execution and delivery of said deeds, she complained to her mother and father of the fact that neither she nor plaintiffs had received any part in the distribution of said land. Subsequently, she received a settlement satisfactory to her; but whether out of the estate of her father, or mother, or both, is not shown. Plaintiffs had not then and never did receive anything from Mrs. Miller's separate property or estate. Mrs. Johnson, the mother of plaintiffs, seems to have separated from her husband and returned to the parental roof with her children some six or eight years prior to the execution of said deeds. She and her children were received, supported, and loved as other members of the family. She and the children as they grew up assisted in the duties of the home, and when the boys became old enough to do so they assisted in work on the farm. All of the children were sent to school and seemed to have been furnished ordinary opportunities for acquiring an education. Their mother, Mrs. Johnson, died about three years before the execution of said deeds. Mrs. Oliver and Miss Ruth Miller, two of the defendants, seem to have been in constant attendance upon their mother until her death. Miss Ruth especially ministered to her mother in her affliction with tenderness and self-sacrificing devotion. The statement of facts contains nothing showing any ill will or unkind feeling on the part of either Mr. or Mrs. Miller toward plaintiffs or their mother.

[1] The four deeds involved herein effected partition and distribution of the said tract of land among the respective grantees therein. Said tract of land contained 640 acres and was situated in Hill county, Tex. The

said deeds were all prepared at the same time and executed and delivered at the same time. Mr. Miller had the land surveyed into said four parcels, had the deeds prepared, and had a notary go to his home for the purpose of taking the acknowledgment of Mrs. Miller. Said deeds are dated and purport to have been acknowledged on January 1, 1918. There is testimony to the effect that said deeds, though not at the time formally executed, were delivered to the respective grantees by Mr. Miller, in the presence of his wife, on Christmas Day, 1917. The statement of facts contains approximately 150 pages. The major portion of the same bears directly on the physical and mental condition of Mrs. Miller. Such testimony covers a period of from 10 to 15 years. The time of the occurrence of most of the incidents recited in said testimony, and of the observations of Mrs. Miller detailed therein, is very vaguely stated. Generally, the evidence tends to show a progressive decline in Mrs. Miller's condition, which continued until her death in the spring of 1920. In deference to the rule of law laid down in the authorities hereinafter cited, we will recite the evidence bearing on Mrs. Miller's physical and mental condition in its most favorable aspect for plaintiffs, ignoring all conflicts and contradictions. Eastham v. Hunter, 98 Tex. 560, 565, 86 S. W. 323.

The age of Mrs. Miller at the date of said deeds is not shown. She was, however, an elderly woman. She had borne thirteen children, seven of whom were dead at that time. Her oldest child was then about 47 years of age. We have prepared abridged statements of the substance of some of the testimony most favorable to plaintiffs' contention.

Mrs. Daniels, daughter of Mrs. Miller, testified, in part, substantially as follows:

"For several years before Mrs. Miller's death, she was totally blind. For eight or ten years prior to her death she was not physically able to get up and down out of her bed and look after herself. She was lifted. For the last years of her life she didn't have good use of her limbs and hands. I don't think she could turn herself over in bed. She suffered intensely for many years before she died. During the last several years of my mother's life, her hands had to be moved and placed on the pillows to rest them. They were all drawn with rheumatism and she had no use of them. They had to be moved and placed by some one else. I never saw her trying to use them for some time before her death."

Miss Daniels, daughter of Mrs. Emma Daniels, testified, in part, substantially as follows:

"In the last years of Mrs. Miller's life, she was not able to do anything for herself. She couldn't turn herself over in bed and had to be turned over and lifted up. She didn't have any use of her limbs, and the best I can remember, she didn't have very much use of her hands.

They were swollen and drawn and her fingers drawn in toward the palm. She would cry with pain."

Mrs. Cozatt, a sister of the father of plaintiffs, testified, in part, substantially as follows:

"Mrs. Miller would just lie there when you would go in and pay no attention to you until she was spoken to by some member of the family, and they would tell her who I was, and she would say what some member of the family would tell her to say. They would tell her to speak to me and call my name, and she would just say what they told her to say. She had no physical strength at all. She did not carry on any connected conversation with me or discuss any matters with me. The extent of the conversations I had with her during the latter years of her life was just as the members of the family would put the words into her mouth to speak. She seemed to have no conversational powers within herself. During the last few years of her life I didn't hear her carry on what I think could be called a conversation with any one. The members of the family, or some members of the family, would tell her who I was, and she would speak to me, and then ask maybe a question or two, and then she would seem to lose sight of the fact that there was any one present. I could not conscientiously say that I believe Mrs. Miller was responsible mentally or physically for anything that would pertain to business. I observed the condition of her mind when I was in her presence, but I would say that owing to the fact that she was not capacitated to carry on a conversation, I should say that that would be an indication that she was mentally incapacitated."

Dr. Woods testified, in part, substantially as follows:

"I treated Mrs. Miller for about two months in the spring of 1910. My treatment is evolved out of chiropractic and osteopathy and is termed 'neuropathic' treatment. She was exceedingly childish. She cried a great deal. When I first began treating her, if I happened to hurt her she would sometimes pull my hair, and about that time the barber cut my hair real short. The next time I gave her a treatment and hurt her, she undertook to pull my hair, and she cried about that. She was probably not normal from long confinement. I think she was capable of knowing her mind at the times I saw her if she was consulted upon or about a thing. In a great many cases, physical suffering from rheumatism and blindness would impair the mental faculties."

Mrs. J. T. Humphreys, a niece of Mr. Miller, testified, in part, substantially as follows:

"When I came some one would say, 'Bobbie has come to see us,' and Mrs. Miller would always say, 'I am glad to see you, honey,' or something like that. That was the extent of the conversation, because she didn't seem to have the strength or she wouldn't know what you would say. She didn't engage in any conversation more than just to state the fact that she was glad to see me and ask if I had the children with me, and if I did, I would say, 'Aunt Minnie, here is the baby.' She

would run her hand over her and say, 'Honey, I am glad to see you all again.' Her food had to be placed in her mouth by some member of the family for years back; I would say six or seven years. I would say that her mind was impaired to the extent that her body was. I don't mean to insinuate that Aunt Minnie was crazy, you understand, but I mean to say I think her mind was affected the same as her body. It would come to me as we talked that she would go over the same thing time and time again, and from the conversation she carried on I judged her mind was weakened according to her body. She was treated just like a child, and I only saw her doing just what some one would tell her. She did not on any occasion when I was in her presence, during the last several years before her death, initiate any conversation or give any expression to any idea of her own. She didn't do anything more than what she was told to do—no further than speak to me when she was told I was present."

Mrs. Anderson, another relative, testified, in part, substantially as follows:

"Sometimes Mrs. Miller would talk quite rational, and other times I would think she was not. It was according to her health and all such things, and it kinder embarrassed her mind some. I would say that condition was true and prevailing when I last saw her. She would talk as though she was just childish, and her conversation made me think that her mind was embarrassed or impaired."

Mrs. W. C. Humphreys, daughter of Mrs. Anderson, testified, in part, substantially as follows:

"In my opinion, Mrs. Miller's mind was unsound; couldn't have been otherwise. I am not able to recall all the things that impressed my mind as to her mentality. I didn't impress my mind with the things that she might do. I didn't attempt to go over all those things, but I did form an impression of her mind. She would be talking to some of us and would ask the same thing over and over. Every time I would be with her she would repeat like that. She did not carry on any connected conversation. In my opinion her mind was not sufficiently strong that she could understand the ordinary affairs of life."

Mrs. Daniels further testified, in part:

"I talked with my mother about these deeds. I asked her if she knew that Papa had divided her estate and left me and Mary's children out of it, and she said she knew they had done something, but she didn't know just what it was. She told me that she knew that I knew that it was not her wishes. She said she didn't know that we had been left out of the division. She asked me how she could have fixed it."

[2, 3] Mrs. Miller's capacity to execute the deeds involved herein depends on her ability at the time to understand the nature and effect of her action and to exercise her will in relation thereto. In determining this issue, evidence of her mental and physical condition both before and after such execution may be considered. Farmers' State Bank v. Farmer (Tex. Civ. App.) 157 S. W. 283, 286; Caddell v. Caddell, 62 Tex. Civ. App. 461, 131 S. W. 432, 434; 18 C. J. p. 218, § 131, Id. p. 221, § 134.

[4] In determining whether the issue of Mrs. Miller's mental capacity to execute said deeds should have been submitted to the jury, we must consider only the evidence favorable to plaintiffs' contention, discarding all evidence to the contrary. No question of preponderance of evidence is involved. If the evidence tending to show that Mrs. Miller was not at the time mentally capable of understanding the nature and effect of her act in executing said deeds, standing alone and uncontradicted, was sufficient to support a finding of incapacity, the court erred in instructing a verdict for defendants. We think such evidence, so considered, meets the test prescribed, and that the action of the court in instructing a verdict was error. Progressive Lumber Co. v. Marshall & East Texas Ry. Co., 106 Tex. 12, 14, 155 S. W. 175; Eastham v. Hunter, supra; Harpold v. Moss, 101 Tex. 540, 542, 109 S. W. 928; Choate v. S. A. & A. P. Ry. Co., 90 Tex. 82, 88, 36 S. W. 247, 37 S. W. 319.

Plaintiffs contend that the court erred in instructing a verdict for the defendant on the further ground that the evidence showed that Mrs. Miller was induced to execute said deeds by reason of undue influence exercised upon her by her husband Mr. Miller. Most of the evidence relied on as raising the issue of undue influence is included in our prior statements of the facts proved and our recitation of the evidence adduced, and need not be repeated. There was testimony to the effect that Mr. Miller was a man of strong will power and strong prejudices. It was shown that Mrs. Daniels asked him why he divided the Texas land between the other children and left her and plaintiffs out, and that he said:

"I can just tell you why I did it. I have heard that Jim said he was going to wind up my estate, and I intended to fix it before I died so he couldn't." (Jim was the husband of Mrs. Daniels.)

When Mrs. Daniels asked him if he thought the division of said property made by said deeds was the right thing to do and was what Mrs. Miller wanted done, he said he fixed the deds like he wanted them, and that they were going to stay that way. Defendant Ruth Miller was present on that occasion and said she thought her father ought to have the say so how the property went. Mrs. Oliver stated that her father had divided said lands, and all the defendants, respectively, stated that he had given them their said deeds. It was agreed in open court that plaintiffs received 240 acres of land in Henry county, Tenn., which was devised to them by Mr. Miller, their said grandfather, by will dated March, 1920. There is no evidence that Mr. Miller ever at-

tempted to coerce his wife or thwart her will in any respect whatever.

[5-9] A deed executed as the result of undue influence may be avoided. While the mental power of the grantor in the deed may be taken into consideration with other evidence in determining the issue, such issue presupposes sufficient mental capacity to make a valid conveyance. Such issue is proved only when it is shown that such influence was exercised, and that it subverted and overpowered the will of the grantor and caused the execution of a conveyance which the grantor would not have executed but for such influence. Declarations of the grantor after the execution and delivery of a deed are not competent evidence to prove that such conveyance resulted from the exercise of undue influence upon such grantor. Neither does the fact that some of the grantor's children or grandchildren are excluded from her bounty in itself prove the exercise of such influence. Rankin v. Rankin, 105 Tex. 451, 456, 151 S. W. 527; Scott v. Townsend, 106 Tex. 322, 166 S. W. 1138; Beville v. Jones, 74 Tex. 148, 151, 153, 11 S. W. 1128; Salinas v. Garcia (Tex. Civ. App.) 135 S. W. 588, 591 (writ refused); Berry v. Brown (Tex. Civ. App.) 148 S. W. 1117, 1119 (writ refused); Wetz v. Schneider (Tex. Civ. App.) 96 S. W. 59; Barry v. Graciette (Tex. Civ. App.) 71 S. W. 309; In re Bartels' Estate (Tex. Civ. App.) 164 S. W. 859, 866; 18 C. J. P. 236 et seq.

[10-13] Assuming on this phase of the case that Mrs. Miller had mental capacity sufficient to understand the nature and effect of her act in executing and delivering said deeds, we fail to find in the statement of facts any competent evidence that her action in doing so was not free and voluntary, nor that such action was induced by anything said or done by her husband, who alone is charged with exercising undue influence. Her declarations made some time after the execution of said deeds, to the effect that she knew something had been done but she did not know what, and that it was not her wish to have Mrs. Daniels and plaintiffs left out of the division of said property, while admissible on the issue of condition and capacity of her mind, were, under the authorities above, incompetent to prove that the execution of said deeds resulted from undue influence exerted upon her by her husband. He was the natural and proper agent of his invalid wife in transacting her business. Assuming that she wished. the property divided between the grantees in said deeds, he was the proper person to have the land surveyed and the deeds prepared and to have a notary attend and take her acknowledgment. There is no evidence that in this or any other matter he ever imposed his will upon his wife or thwarted her wishes or purposes. There is no evidence that the purpose of conveying said lands to the grantees in said deeds originated with him, nor that he ever suggested, advised, or requested the execution of such deeds. There is no evidence of any motive for his wishing the plaintiffs excluded from participation in the division of such property. The fact that some two years after the execution and delivery of said deeds, he declared that he was satisfied with them and intended them to stand, was not competent evidence to prove, and did not prove, that Mrs. Miller executed said deeds against her will and that she was caused to do so by the influence exerted upon her by him. He was not one of the grantees in said deeds, and his subsequent acts and declarations were not competent as admissions against interest. In the absence of direct evidence of undue influence, the same may be established by circumstances; but in such cases the circumstances relied on must be of a reasonably satisfactory and convincing character. They must not be equally consistent with the absence of the exercise of such influence. Helsley v. Moss (Tex. Civ. App.) 113 S. W. 599, 602 (writ refused). The circumstances in evidence are at least not inconsistent with the theory that if Mrs. Miller was mentally capable of executing said deeds, she did so of her own free will and accord. We think the evidence in this case, at most, only raises a surmise or suspicion that Mr. Miller might have unduly influenced his wife in such execution, and that it is insufficient to support such a finding. This being the case, as to the issue of undue influence the court did not err in refusing to submit such issue to the jury. Mayes v. Mayes (Tex. Civ. App.) 159 S. W. 919, 923; Joske v. Irvine, 91 Tex. 574, 44 S. W. 1059; Washington v. M. K. & T. Ry., 90 Tex. 314, 321, 38 S. W. 764.

[14] Plaintiffs complain of the action of the court in sustaining exceptions to so much of the petition as attacked the validity of the deeds sought to be set aside on the ground that Mrs. Miller never acknowleged said deeds in the manner provided by law, and that the certificate of the notary taking such acknowledgments, though regular in form and reciting full compliance with the provisions of the statute in such cases, was in fact false and constituted a legal fraud practiced by such notary in taking and certifying said acknowledgments.

The consideration for said deeds was love and affection, and each deed so recited. The property conveyed thereby was the separate property of Mrs. Miller. Each deed had indorsed thereon a certificate under the hand and seal of the notary, reciting that Mrs. Miller acknowledged the same in the manner and form as required by the laws of this state. Plaintiffs' entire pleadings should be construed together in determining the issue here presented. They pleaded that Mrs. Miller was old, decrepit, helpless, bedridden,

blind, weak-minded, and mentally incapable of understanding the nature and effect of said deeds or her act in executing the same. They further pleaded that if mistaken as to her entire lack of mental capacity, that she was incapable of understanding the nature and effect of said deeds unless and until the same, and every part thereof, was fully and plainly explained to her. They further pleaded that she was induced to execute the same under and by virtue of undue influence exerted upon her by her said husband and would not have executed the same but for such influence. They further alleged that said notary did not in fact examine Mrs. Miller privily and apart from her husband, nor explain the said deeds, or either of them, to her; that he did not ask her if she had signed the same willingly nor whether she wished to retract the same. They further alleged that Mrs. Miller did not in fact know the contents of said deeds, and that said notary did not give her an opportunity to retract the same, and that said purported acknowledgments were taken in the presence and hearing of Mrs. Miller's husband and in the presence of the grantee named in one of said deeds.

The substance of defendants' exception to plaintiffs' said allegations is that no fraud was alleged to have been perpetrated on Mrs. Miller by the notary taking said acknowledgments or by the defendants, or either of them; that there was no allegation that the defendants, or either of them, knew of any fraud perpetrated or attempted to be perpetrated on Mrs. Miller; and that plaintiffs' said allegations were therefore insufficient as a predicate for the admission of oral testimony to impeach the truth of the recitals in said certificates.

Plaintiffs did not deny that Mrs. Miller signed each of said deeds, nor that the notary came into her presence and purported to take her acknowledgment. Their contention is limited to the charge that he did not comply with the requirements of law in attempting or purporting to take such acknowledgments with reference to the matters alleged; that his certificate reciting such compliance was false, and his act in making and signing the same fraudulent; and that grantees in said deeds being donees and having given no consideration of any kind therefor, said deeds were void and did not convey the interest of Mrs. Miller in the lands purported to be conveyed thereby.

[15, 16] The statute provides that no acknowledgment of a married woman to any conveyance or other instrument purporting to be executed by her shall be taken, unless she has had the same shown to her and then and there fully explained to her by the officer taking the acknowledgment on an examination privily and apart from her husband. The statute further provides that such officer shall not certify to the same unless she thereupon acknowledges to such officer that the same is her act and deed, that she has willingly signed the same, and that she wishes not to retract it. The statute further provides that the officer taking such acknowledgment shall place on the instrument so acknowledged a certificate under his hand and seal, in the form prescribed, which form recites compliance with such requirements. Such an acknowledgment is necessary to make the deed of a married woman effective, and unless such deed is so acknowledged, it is void. Langton v. Marshall, 59 Tex. 296, 299, 300; Holland v. Votaw, 62 Tex. Civ. App. 91, 130 S. W. 882, 884 (writ refused). The fact of such acknowledgment can be proved only by the terms of the certificate of the officer taking the same, or by decree of court correcting such certificate if defective where a proper acknowledgment was actually made. Johnson v. Taylor, 60 Tex. 360; Veeder v. Gulmer, 103 Tex. 458, 129 S. W. 595. Such certificate under the hand and seal of the officer is conclusive evidence of the facts recited therein, unless the truth of such recitals, or some material part of the same, is impeached in the manner provided by law.

The rule prescribed by our Supreme Court with reference to the impeachment of a certificate of acknowledgment of a married woman in the case of Cole v. Bammel, 62 Tex. 108, 112, is as follows:

"A married woman's deed, however, may have the proper certificate attached, and yet be avoided by her *if the certificate does not speak the truth*, or the deed or acknowledgment were obtained by fraud or force, provided the purchaser is chargeable with notice of either of these facts before the purchase money is paid. Davis v. Kennedy, 58 Tex. 516; Wiley v. Prince, 21 Tex. 637. [Italics ours.] * * * The purchaser need not be an active participant in *such a transaction in order to vitiate it, but it is sufficient if he had notice of its character before he parted with the purchase money.*"

We cite in this connection the following cases: Miller v. Yturria, 69 Tex. 549, 552, 7 S. W. 206; Pool v. Chase, 46 Tex. 207, 210; Crabb v. Bell (Tex. Civ. App.) 220 S. W. 623, 624; Essex v. Mitchell (Tex. Civ. App.) 183 S. W. 399, 402, 403; DeWest v. Barthelow (Tex. Civ. App.) 136 S. W. 86; Gary v. McKinney (Tex. Civ. App.) 239 S. W. 283; Stephenson v. Mallett (Tex. Civ. App.) 240 S. W. 633, 637.

Many of the cases on the subject of impeachment of the certificate of a notary purporting to show proper acknowledgment by a married woman, expressly or by implication, limit the rule denying the right to so impeach such certificate to cases where the conduct of the grantee is in good faith and where he has paid a valuable and adequate consideration for the property prior to notice

of any irregularity in taking such acknowledgment. Waltee v. Weaver, 57 Tex. 569, 571; Williams v. Pouns, 48 Tex. 141, 146; Stallings v. Hullum, 79 Tex. 421, 425, 15 S. W. 677. There are, however, a number of opinions by the courts of this state where the language used is broad enough to include within the rule so announced cases where the certificate of the officer shows compliance with the statute in taking such acknowledgment, regardless of whether any consideration passed from the grantee to the grantor, or not. Among such cases are the following: Kocourek v. Marak, 54 Tex. 201, 205, 38 Am. Rep. 623; Hartley v. Frosh, 6 Tex. 208, 216, 55 Am. Dec. 772; Atkinson v. Reed (Tex. Civ. App.) 49 S. W. 260, 262; Herring v. White, 6 Tex. Civ. App. 249, 25 S. W. 1016, 1017; Stringfellow v. Brazelton (Tex. Civ. App.) 142 S. W. 937, 938; Ellis v. Lehman, 48 Tex. Civ. App. 308, 106 S. W. 453; Bryant v. Grand Lodge (Tex. Civ. App.) 152 S. W. 714; Tinkham v. Wright (Tex. Civ. App.) 163 S. W. 615; Evart v. Dalrymple (Tex. Civ. App.) 131 S. W. 223. An examination of the opinion in each of said cases shows expressly or by implication the passing of a substantial consideration, as distinguished from the mere existence of love and affection on the part of the grantor for the grantee. In all the cases cited by defendants to defeat the contention of plaintiffs, the existence of such consideration is so shown or clearly implied. In fact, we have found no case in this state involving an attempt to impeach a certificate in due form showing the acknowledgment of an instrument by a married woman where no substantial consideration was either paid, delivered, or promised.

This case involves the right of a married woman, or her heirs, to impeach the recitals in a certificate in due form purporting to show a formal and statutory acknowledgment by her, as against an original grantee holding under deed signed and delivered solely in consideration of love and affection, and so reciting in its face. The distinction between cases where a substantial consideration passed or was promised, and cases where conveyance is purely gratuitous, was recognized by our Supreme Court in the case of Wiley & Co. v. Prince, 21 Tex. 637, 640. We quote from the opinion in that case as follows:

"Where the property is alienated in fee, and a consideration passes, it is but reasonable, and it is necessary for the security of titles and the protection of property that the certificate of the officer should be held as conclusive, unless the fraud or wrong charged to impeach the instrument were known to the grantee, as the circumstances were such as should have impelled him to an inquiry which he neglected. But can this be the rule where no consideration passes? Where the wife becomes a surety to pay the debts of the husband, antecedently contracted? To say the least, this is doubtful."

It seems, however, that such consideration need not be a valuable one so as to make the grantee an innocent purchaser under the rule prescribed in cases of controversy between a junior grantee and the holder of a prior unrecorded deed. It has been declared by our Supreme Court that a debt surrendered or discharged is a right lost on one side and a benefit conferred on the other. That court further declares that mere inadequacy does not prevent the grantee from being considered a purchaser upon consideration; but that if it appear that the consideration is so grossly inadequate as to raise a suspicion that she did not understand the transaction, it would be the duty of the purchaser to inquire and learn the true condition of affairs, and that in such case the certificate of the officer could be impeached and shown to be false. Webb v. Burney, 70 Tex. 322, 325, 326, 7 S. W. 841. Many of the reported cases involve acknowledgments to deeds of trust where some indulgence, or incidental benefit constituted a substantial, if not also a valuable consideration within the rule with reference to junior purchasers.

It has been, we think, uniformly held that when the grantee was present when the acknowledgment was taken, he is chargeable with notice of the failure of the officer to comply with the requirements of the law. Blume v. White (Tex. Civ. App.) 111 S. W. 1066; Cockerell v. Callaham (Tex. Civ. App.) 257 S. W. 316, 320, 321; Stephenson v. Mallett (Tex. Civ. App.) 240 S. W. 633, 637 (writ refused).

[17, 18] It is the acknowledgment of a married woman which confirms her signature to the deed and makes such deed effective to convey the property therein described. The law prescribes the requisites for a valid acknowledgment. It also requires the officer taking such acknowledgment to certify under his hand and seal of office that such requirements have been complied with. His action in doing so is quasi judicial. Johnson v. Taylor, 60 Tex. 360, 364. Such certificate is in all cases prima facie evidence of the facts therein recited, and it is conclusive evidence of the truth of such recitals in favor of the grantee in good faith for a valuable consideration, as that term is used by our courts in such cases, provided he is not chargeable with notice of the falsity thereof. It certainly is a grave breach of duty for an officer purporting to take the acknowledgment of a married woman to fail to comply with the requirements of the law in such cases. It is not only a grave breach of trust and of duty to the grantor for such officer to falsely certify that he has complied with such requirements when he has not done so, but such action is made a felony by article 358

of the Penal Code of this state. Such action on the part of such officer is not only reprehensible and penal, but constitutes in itself a fraud and imposition upon the grantor in such deed. To hold such false certificate valid and conclusive in favor of a grantee who was present when the purported acknowledgment was taken, and who had actual knowledge of the falsity of such certificate, would be to practically nullify the provisions of the law with reference to acknowledgments of married women and to deny to them the safeguard and protection of their property rights which such law was intended to insure. While the grantee in a deed executed solely in consideration of love and affection, who accepts the same without notice of the falsity of the certificate of acknowledgment indorsed thereon, is not a party to the fraud and imposition of the officer giving such certificate, such grantee, on learning of such fraud and imposition, upon the grantor, should not, in our opinion, be entitled to deny the right of the grantor or her heirs to impeach the truth of the material recitals of such certificate, unless he shows some equitable ground growing out of some action in good faith on his part in reliance upon such conveyance; such, for instance, as actual occupancy of the property and valuable improvements thereon. The court erred in sustaining defendants' said exceptions.

It follows, as a result of the above holding, that the trial court should have admitted for consideration by the jury all competent evidence offered by the parties hereto tending either to impeach or sustain the truth of the recitals in the certificates of acknowledgment to said deeds.

[19-21] Since the judgment of the trial court must be reversed, it becomes, in view of another trial, proper to consider the issues presented by the action of the court on defendants' pleas in abatement. It is not necessary, however, to consider the interesting questions of procedure presented in that connection. Plaintiffs allege, in substance, that the land involved in this suit was the separate property of Mrs. Miller; that she died intestate; that plaintiffs were the only children and heirs of Mrs. Mary Johnson, a daughter of Mrs. Miller, and they claimed in right of such heirship; that defendants Luther Miller, Mrs. Simmons, Mrs. Oliver, Miss Miller, Cooper Miller, and Mrs. Daniels were children of Mrs. Miller and her only surviving heirs other than plaintiffs; that the deeds made by Mrs. Miller to the first four named defendants were void, and that the title to said land passed at Mrs. Miller's death to her said heirs; that Cooper Miller and Mrs. Daniels had received advancements sufficient to satisfy their rights as heirs; and that plaintiffs and the other defendants were entitled to the whole of said land by virtue

of said heirship. Plaintiffs prayed that said deeds from Mrs. Miller to said four defendants be canceled; that the cloud cast thereby on the title to their interest in said land be removed; that their rights be established and said land partitioned between plaintiffs and said four defendants according to the laws of descent and distribution; and for general and special relief, both in law and equity. They made all said children of Mrs. Miller parties to said suit. The court, in response to pleas in abatement urged by defendants, required plaintiffs to omit Cooper Miller and Mrs. Daniels and her husband as parties defendant, and to limit their cause of action and prayer for relief to the issue of the validity of said deeds and their right to have the same canceled. In this the court erred. It is true all other rights asserted and relief sought in plaintiffs' petition were dependent on their right to avoid and cancel said deeds, but they were not required to bring separate suits to secure full relief. It was announced by our Supreme Court at an early date, and it has since been consistently followed, that a suit asserting an equity which, if established, entitled plaintiff to recover land, or any interest therein, may have the twofold purpose of establishing such equitable right and recovering title to and possession of such land. Miller v. Rusk, 17 Tex. 170, 171; Thomson v. Locke, 66 Tex. 383, 389, 1 S. W. 112; McCampbell v. Durst, 15 Tex. Civ. App. 522, 40 S. W. 315, 320; Hand v. Errington (Tex. Com. App.) 242 S. W. 721, 725, par. 7; (Tex. Com. App.) 248 S. W. 25.

Nor were plaintiffs required to first establish the right of cancellation of said deeds in one suit and then establish their right to an interest in said land and secure partition thereof in another, on the supposed ground that Cooper Miller and Mrs. Daniels and husband were not proper parties to so much of the suit as sought cancellation of said deeds. Said last-named parties were, by virtue of their alleged heirship, prima facie interested in such cancellation. Whether they had received advancements which would preclude them from participating in the division of the land, as alleged by plaintiffs, was an issuable fact which might on the hearing be determined one way or the other. At any rate, their heirship constituted such an apparent interest in the land and cloud on the title thereto of the other heirs of Mrs. Miller as required them to be parties to the partition of said land, whether finally allotted a part thereof or not. It is not indispensable that all the parties defendant in a suit should have an interest in all the matters in controversy; it is sufficient if each party defendant has an interest in some of the matters in controversy, and that they are connected with the others. Love v. Keowne. 58 Tex. 191, 198, 203. The cancellation of said

deeds sought by the plaintiffs invoked the equity jurisdiction of the court and characterized the proceeding as a suit in equity. The rule in such cases is announced in 1 Pom. Eq. Juris. § 114, p. 133, as follows:

"The governing motive of equity in the administration of its remedial system is to grant full relief, and to adjust in the one suit the rights and duties of all the parties, which really grow out of or are connected with the subject-matter of that suit. Its fundamental principle concerning parties is that all persons in whose favor or against whom there might be a recovery, however partial, and also all persons who are so interested although indirectly, in the subject-matter and the relief granted, that their rights, or duties might be affected by the decree, * * * shall be made parties to the suit; and it is not ordinarily a matter of substantial importance whether they are joined as plaintiffs or as defendants. * * * The primary object is that all persons sufficiently interested may be before the court, so that the relief may be properly adjusted among those entitled, the liabilities properly apportioned, and the incidental or consequential claims or interests of all may be fixed, and all may be bound in respect thereto by the single decree."

See, also, Love v. Keowne, supra, p. 198; Connell v. Chandler, 11 Tex. 249, 253; O'Brien v. First State Bank & Trust Co. (Tex. Civ. App.) 239 S. W. 715, 716; Barmore v. Darragh (Tex. Civ. App.) 227 S. W. 522, 523; Wisdom v. Peek (Tex. Civ. App.) 220 S. W. 210, 214, 215; 2 Black on Rescission & Cancellation, § 689. See, also, as relevant in general to the issues involved, Bridges v. Cundiff, 45 Tex. 440, 443; Ingram v. Abbott, 14 Tex. Civ. App. 583, 38 S. W. 626, 629 (writ refused); Woodhouse v. Cocke (Tex. Civ. App.) 39 S. W. 948; Sherwood v. Sherwood (Tex. Civ. App.) 225 S. W. 555; Milam v. Hill, 29 Tex. Civ. App. 573, 69 S. W. 447; Banks v. Blake (Tex. Civ. App.) 143 S. W. 1183; 1 C. J. p. 1059, § 194; Id. p. 1060, § 198.

[22] Plaintiffs complain of the admission in evidence, over their objection, of the testimony of a physician that in his opinion Mrs. Miller had sufficient mental capacity to transact any business that might be fully explained to her. This testimony involved the opinion of the witness as to Mrs. Miller's legal capacity to transact business, in addition to and as distinguished from her mental capacity to understand the nature and effect of her act in transacting such business, and should have been excluded. Brown v. Mitchell, 88 Tex. 350, 366, 31 S. W. 621, 36 L. R. A. 64; 4 Wigmore on Evidence, p. 174, sec. 1958.

[23] The same witness was permitted, over objection of plaintiffs, to testify that Mrs. Miller, in his opinion, had sufficient mental capacity to understand the nature and effect of her action in transacting a business matter if same were fully explained to her. This testimony involved an opinion of the witness as to the mental condition of Mrs. Miller with reference to her capacity to understand business affairs. It involved a question of fact only and was properly admitted. Brown v. Mitchell, 88 Tex. 350, 365, 31 S. W. 621, 36 L. R. A. 64; 4 Wigmore on Evidence, p. 116, § 1921.

[24] Miss Ruth Miller, one of the defendants, was permitted, over the objection of plaintiffs, to testify to certain facts concerning the physical condition and acts of Mrs. Miller at and about the time the deeds under consideration were executed. Inasmuch as plaintiffs sued as heirs of Mrs. Miller, neither they nor defendants were competent witnesses to testify, over the objection of the opposite party, to any transaction with Mrs. Miller. Such inhibition included testimony concerning her acts and conduct and her mental condition based on the observation of the witness testifying thereto. Holland v. Nimitz, 111 Tex. 419, 232 S. W. 298, 299, 300, 239 S. W. 185; R. S. art. 3690.

The judgment of the trial court is reversed and the cause remanded.